**Mark W. GERLACH, Appellant,**

v.

**Linda A. (Gerlach) ADAIR, Respondent.**

No. WD 66363.

Missouri Court of Appeals, Western District.

Jan. 23, 2007.

ment for our review.

Stanley B. Cox, Sedalia, MO, for appellant.

James O. Kjar, Warsaw, MO, for respondent.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JJ.

ROBERT G. ULRICH, P.J.

Mark Gerlach (Father) appeals the judgment of the trial court modifying Linda (Gerlach) Adair's (Mother) child support obligation. The court ordered Mother to provide health insurance coverage for the minor child but found that the presumed correct child support amount as calculated by Form 14 was unjust and inappropriate and that Mother owed no child support to Father, who had custody of the minor child born to the parties. Father contends that the trial court's downward deviation to $0 from the presumed correct child support amount was not supported by the record. The judgment of the trial court is reversed, and the case is remanded.

### Facts

The parties' marriage was dissolved in 1995, and custody of the two minor children born to the marriage, Cody, born February 10, 1984, and Caitlin, born March 30, 1988, was awarded to Father subject to Mother's visitation. Mother was ordered to pay child support. Judgments modifying Mother's child support obligation were entered in 1998 and 2002.

In December 2004, Father filed the motion to modify at issue in this case. In the motion, Father sought an increase in child support alleging that a change of circumstances so substantial and continuing had occurred to make the terms of the prior child support order unreasonable. Specifically, he alleged that Cody, who was 20 years old, suffered from a disabling illness that caused him to be incapacitated, unable to support himself or to attend post secondary education, and in need of continued support from Mother. Mother filed a counter-motion to modify alleging that Cody's emancipation was a substantial and continuing change of circumstances that rendered the terms of the prior order unreasonable. Each party filed a Form 14.

Trial was held on the motions, and at the conclusion, Mother filed a second Form 14, which she argued conformed with the evidence presented. Thereafter, the trial court entered its judgment of modification. It found that a substantial and continuing change of circumstances had occurred to make the previous child support unreasonable. It found that Cody was emancipated. It adopted the Form 14 filed by Mother but found the presumed correct child support amount was unjust and inappropriate for multiple reasons in-

cluding: (1) Caitlin has an income of $599 per month; (2) Father has assets that are underutilized; (3) Caitlin has behaved in such a way that it is unfair to require a parent to pay that much support; and (4) if the family was intact and Caitlin was as disrespectful and ungrateful to Mother as she demonstrated during the court proceedings, some sort of sanctions would be imposed, but Father will not impose sanctions and Mother is unable. Accordingly, the court ordered Mother to provide health insurance for Caitlin but pay no child support directly to Father. This appeal by Father followed.

### Calculation of Child Support

In his sole point on appeal, Father contends that the trial court erred in rebutting the presumed correct child support amount to $0 because such rebuttal was not supported by the record. An award of child support is within the sound discretion of the trial court. *Schriner v. Edwards,* 69 S.W.3d 89, 92 (Mo.App. W.D. 2002). A child support award will not be reversed unless the evidence is "palpably insufficient" to support it. *Id.*

A two-step procedure is required in determining a child support award in compliance with Rule 88.01 and section 452.340, RSMo Cum.Supp.2005. *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997); *Timmons v. Timmons,* 132 S.W.3d 906, 910 (Mo.App. W.D.2004); *Woolridge v. Woolridge,* 915 S.W.2d 372, 378–79 (Mo. App. W.D.1996). First, "the trial court must 'determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation'." *Timmons,* 132 S.W.3d at 911 (quoting *Woolridge,* 915 S.W.2d at 379). In calculating the presumed correct child support amount, the trial court can either accept one of the parties' Form 14 calculations or reject the parties' Form 14s and

make its own calculation. *Id.* The use of Form 14 is mandatory in calculating child support in a modification proceeding. *Wheeler v. Wheeler,* 110 S.W.3d 828, 831 (Mo.App. E.D.2003).

In step two, the trial court must next " 'consider whether to rebut the presumed correct child support amount ... as being unjust or inappropriate after consideration of all relevant factors'." *Timmons,* 132 S.W.3d at 911 (quoting *Woolridge,* 915 S.W.2d at 379). In accordance with Rule 88.01, relevant factors include: (1) the financial needs and resources of the child; (2) the financial resources and needs of the parents; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child, and the child's educational needs; (5) the child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and (6) the reasonable work-related child care expenses of each parent. § 452.340.1, RSMo Cum.Supp.2005.

An appellate court reviews the trial court's application of the two-step procedure under the *Murphy v. Carron* standard to determine whether the child support award is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Nelson v. Nelson,* 195 S.W.3d 502, 510 (Mo.App. W.D.2006). The appellate court reviews the trial court's decision to rebut the presumed correct child support amount under the abuse of discretion standard. *Id.*

### Presumed Correct Child Support Amount (PCCSA)

In its judgment in this case, the trial court adopted Mother's Form 14 but

found that the child support amount was unjust and inappropriate. Mother, however, filed two Form 14s at trial, one with a PCCSA of $436 per month, the other with a PCCSA of $350 per month. The trial court failed to specify which Form 14 offered by Mother it adopted, and the record is unclear. By failing to find a PCCSA, the trial court failed to comply with the two-step procedure of Rule 88.01 and section 452.340. The judgment, therefore, must be reversed, and the case remanded. *Simon–Harris v. Harris*, 138 S.W.3d 170, 176 (Mo.App. W.D.2004); *Hennessey v. Smith–Hennessey*, 997 S.W.2d 538, 543 (Mo.App. W.D.1999).

One of Mother's Form 14s apparently includes in Father's monthly gross income (Line 1) the amount of $599, which is social security disability benefits received by Caitlin based on Father's disability. Such disability benefits that are the entitlement of the child rather than the parent in his own right, however, are not to be included in the monthly gross income of the parent for purposes of Rule 88.01 and Form 14. *In re Marriage of Amos*, 843 S.W.2d 946, 955 (Mo.App. S.D.1992), *overruled on other grounds by Turley v. Turley*, 5 S.W.3d 162 (Mo. banc 1999). Father also received disability benefits for himself, and those benefits were properly included in line 1 of the Form 14. Form 14 Directions for Use, Line 1; *Amos*, 843 S.W.2d at 955.

### Rebuttal of PCCSA

■ After adopting one of Mother's Form 14s, the trial court found the child support amount unjust and inappropriate for several reasons and determined that Mother did not owe child support to Father. The first reason listed by the trial court for deviating downward from the PCCSA was that Caitlin has an income of $599 per month. As discussed above, Caitlin receives $599 per month in social security disability benefits because of Father's disability. While Rule 88.01 does not require the income of children to be included in the Form 14 computation, section 452.340.1(1) states that the "financial needs and resources of the child" should be considered as a relevant factor when calculating child support, and Comment G to Line 12 of Form 14 explains that children's income should be considered in determining whether to deviate from the PCCSA. *Adams v. Adams*, 108 S.W.3d 821, 829 (Mo.App. W.D.2003). Accordingly, Missouri courts have held that a noncustodial parent charged with a child support obligation is entitled to a credit toward that obligation for social security disability benefits paid to the custodial parent as a result of the noncustodial parent's disability. *Weaks v. Weaks*, 821 S.W.2d 503, 505–06 (Mo. banc 1991); *Metz ex rel. Metz v. Deichmann*, 982 S.W.2d 781, 782 (Mo.App. E.D.1998). The reasoning is that the purpose of the benefits is to replace income lost due to the disabled parent's inability to work and, thus, withholding a credit against that parent's child support obligation would be inequitable. *Weaks*, 821 S.W.2d at 505–06; *Metz*, 982 S.W.2d at 782. This case differs from *Weaks* and *Metz*, however, in that here, it is Father's social security account from which Caitlin's benefits are derived, and such payments were intended to replace lost income due to Father's disability. The trial court was not, therefore, required to give a credit to Mother for the payments received for the benefit of Caitlin due to Father's disability. *See Adams*, 108 S.W.3d at 830 (where child received monthly social security disability benefits based on custodial parent's disability, trial court was not required to give noncustodial parent a credit against his child support obligation and did not abuse its discretion in finding no reason to deviate

from its Form 14 calculation). Furthermore, the record contains no reasonable basis for the trial court's exercise of discretion to rebut the PCCSA by crediting Mother's child support obligation by the amount of social security benefits Caitlin receives because of Father's disability.

■ The second reason listed by the trial court for deviating downward from the PCCSA was that Father had assets that were underutilized. In his income and expense statement, Father listed $500 per month in farm income from rental/sharecropping of his farm property. He testified that his farm income is derived from a share of the crop farmed by his renter. Apparently, the trial court found the farm asset to be underutilized as evidenced by its remarks at trial:

THE COURT: All right. And then I guess, just from looking at it, you've got an asset that, according to the schedule, was unencumbered. It's bringing in less than a 2 percent return, and you're claiming that you are short for money to provide for your kids.

FATHER'S ATTORNEY: That's the nature of farming. Every farming client I have makes about a 2 percent return. I guess you could sell it and get 3 percent on a CD.

THE COURT: Well, you—I mean, you'd have to be as inept an investor as you were a farmer if you were going to get 3 percent on your cash, but I guess that's possible. All right. I'll hold the record open, and you can submit a Form 14 that you think the evidence supports.

The trial court's finding that the farm is underutilized was not, however, supported by the record. Neither party offered any evidence of an average rate of return for farm rental/sharecropping in Benton County or of the reason Father was earning a below-average rate of return. Evidence was presented that Father's estimate of $6,000 a year in farm income is below his reported farm income of $7,968 in 2004, $7,912 in 2003, and $10,936 in 2002. Such evidence may have been relevant in a decision to impute some income to Father for the purpose of calculating the Form 14 PCCSA. Such evidence of an underutilization of the farm, however, did not provide a reasonable basis for the trial court's decision to not require Mother to pay any child support at all.

■ Finally, the trial court found that it would be "unfair" in requiring Mother to pay the PCCSA because of Caitlin's ungratefulness and disrespect to Mother and Father's failure to sanction her behavior. This conclusion was apparently based on the testimony of Caitlin regarding not participating in visitation with Mother. Caitlin was asked by Mother's attorney, "So you are refusing to go. It's nothing your mother is doing to prevent you from visiting?" She replied, "She is not preventing me from visiting, and she is not my mother." The trial court apparently took offense as evidenced by remarks at the conclusion of the trial:

And then, I guess the next question I've got in this whole tortured mess, has anybody ever apologized or made any showing of some form of appreciation to you ex-wife for the insurance and the expense, or you have just continued to—you know, I think you didn't even wince when your daughter says it's not even my mother—and your son, has he shown any appreciation, or you for that matter, that you have had this coverage through nothing you've done? Has anybody?

\* \* \* \* \*

Well, you know, from day one the issue has been, you know, visitation and contact with these children. And it has—you know, every order I've made has been consistently denied or ignored, or

found some justification not to do it. You know, we've gone to counselors and drawn pictures of mother with horrible, you know, body parts and proud of them and want to show, and we do all this. And we have paid, without fail essentially, for 13 years, provided health insurance, provided way more financial support than the father. And now we're in, you know, never want to see you, never want to do anything. Now that I'm old enough, you'll never see me. You're not my mother. You're not my father. And you all are in here asking for support to continue ad infinitum. That doesn't seem a little strange to you? I'm just asking.

 Both parents have a statutory duty to support their minor children commensurate with their ability to pay. § 452.340, RSMo Cum.Supp. 255; *Smith v. Smith*, 17 S.W.3d 592, 595 (Mo.App. W.D. 2000); *Surface v. Surface*, 10 S.W.3d 216, 218 (Mo.App. W.D.2000)(quoting *Estrem v. Estrem*, 984 S.W.2d 883, 885 (Mo.App. W.D.1999)). The nature of the relationship between the noncustodial parent and the child is not a factor to be considered in determining the appropriate amount of child support. Instead, the primary purpose of child support is to provide for the child's welfare. *Weaks*, 821 S.W.2d at 507; *Stewart v. Stewart*, 988 S.W.2d 622, 625 (Mo.App. W.D.1999). "When it comes to setting the amount and conditions of child support payments, the trial court's primary obligation is to the children to insure that they have the support they need and to which they are entitled under the law." *McCreary v. McCreary*, 954 S.W.2d 433, 452 (Mo.App. W.D.1997). In determining the proper amount of child support, the trial court must balance the needs of the children and the ability of the noncustodial parent to pay. *Weaks*, 821 S.W.2d at 507. Estrangement of parent and child is not listed in section 452.340.1 as a relevant factor for determining child support. *Carmack v. Carmack*, 947 S.W.2d 842, 846 (Mo.App. W.D.1997). Many valid reasons exist for why the legislature may have determined that child support should not depend on the maintenance of a good relationship between parent and child. *Id.*

> For instance, such a rule could induce parents who do not want to pay support to cause an estrangement so that they can limit support. Similarly, a child may have a valid reason to be estranged, such as abuse by the non-custodial parent. Such abuse should not provide a basis to deny child support.

*Id.* at n. 2. Thus, a poor relationship does not eliminate the parent's duty to support her child, nor should a child be penalized for the existence of such poor relationship.

 Section 452.340.7, RSMO Cum. Supp.2005, does allow for the abatement of child support, in whole or in part, upon a finding that the custodial parent has, without good cause, failed to provide visitation to the noncustodial parent pursuant to the terms of a court order. No evidence, however, was presented in this case that Father had affirmatively denied Mother visitation with Caitlin or told Caitlin not to visit Mother. The record demonstrates that Caitlin made the decision not to visit Mother. Father cannot be held responsible for 17–year–old Caitlin's decision. *See Morton v. Myers*, 21 S.W.3d 99, 104–05 (Mo.App. W.D.2000)(noncustodial parent not entitled to abatement of child support where 18–year–old daughter chose not to visit him); *Carmack*, 947 S.W.2d at 846–47 (noncustodial parent not entitled to abatement of child support where 20–year–old daughter chose not to visit him); *Brandt v. Brandt*, 794 S.W.2d 672, 675 (Mo.App. E.D.1990)("It is difficult, if not impossible, for a parent to force an eighteen year old against his will to 'visit' anyone."). Mother

was not entitled to an abatement of child support under section 452.340.7. The trial court misapplied the law in considering Caitlin's behavior in deviating downward from the PCCSA.

The judgment of the trial court is reversed, and the case is remanded with instructions to find a PCCSA and then to consider whether to rebut the amount as unjust and inappropriate in accordance with this opinion.

LOWENSTEIN, J. and SMART, J. concur.