**In Re the Marriage of Terri BOTTORFF and William Jason Bottorff.**

**Terri Bottorff, Petitioner–Respondent,**

**v.**

**William Jason Bottorff, Respondent– Appellant.**

**No. 27587.**

Missouri Court of Appeals, Southern District, Division Two.

May 10, 2007.

Austin L. Mitchell, Salem, MO, for appellant.

Emily Woodward, Legal Services of Southern Missouri, Rolla, MO, for respondent.

GARY W. LYNCH, Judge.

William Jason Bottorff ("father") appeals the trial court's judgment dissolving his marriage with Terri Bottorff ("mother"). Father challenges the judgment's custodial provisions for the parties' four minor children as not being supported by statutorily required findings of fact and the child support amount as being in excess of his ability to pay. We affirm.

### 1) *Factual and Procedural Background*

Mother originally filed her petition for dissolution of marriage in this case in 2002. Father filed a timely answer to the petition, but the case thereafter remained dormant until the parties separated for the final time on December 22, 2004. Father

filed a counter-petition for dissolution in January 2005, and mother filed her first-amended petition in April of that year. The case was tried upon these pleadings, and a final amended judgment was entered on December 5, 2005 ("judgment").

Four children were born of the marriage, the oldest of which was seven years old at the time of the dissolution. The judgment granted the parties joint legal custody and joint physical custody of the children. Father was assigned specific times to exercise custody of the children, and mother was granted custody at all other times. Father's assigned times included 171 to 175 overnight visits per year. Thus, mother's periods of custody included 190 to 195 overnight stays per year.[1]

The trial court specifically found the following. Mother's gross monthly income is $787.70, and her net monthly income is $720.00. Mother's total monthly expenses, including those expenses for the children while in her custody, are $1,510.00. Father's gross monthly income is $2,925.00, and his net monthly income is $2,280.00. His total monthly expenses, including expenses for the children while in his custody, are $1,806.00. Father has a health benefit and dental plan available to him for the children at a cost of $403 per month.

Based upon these findings, the trial court prepared its own Form 14, which resulted in a presumed child support amount of $872.00 per month. Finding that the application of the presumed child support amount as so calculated was "just and appropriate in the circumstances[,]" the trial court ordered father to pay child support in the amount of $872.00 per month to mother.

Father raises three points on appeal of the judgment. First, father argues that the trial court, in its written findings, did not properly discuss how the enumerated factors of § 452.375 [2] were considered in making its physical custodial determinations. Second, father claims the trial court failed to state in its written findings the factual basis for not granting him a greater amount of custodial time. Lastly, father disputes the amount of child support awarded.

## 2) *Points I and II—Lack of Written Findings*

■ Father's first two points raise essentially the same issue. In the first, father contends that the trial court did not set forth in the judgment how the relevant factors it considered in determining the custodial arrangement supported its custodial determination. In the second point, father alleges that the trial court failed to state in the judgment the factual basis for not granting him more custodial time.[3] In

---

1. The least favorable calculation for mother is a non-leap year in which father was awarded 175 overnights (365 − 175 = 190). The most favorable is a leap year in which father was awarded 171 overnights (366 − 171 = 195).

2. Unless otherwise noted, all statutory references are to RSMo 2000.

3. Although not properly preserved for our review in his point relied on, father, in the argument portion of point two of his brief and on oral argument, urges us to consider whether the trial court's grant of custodial time to mother at all times "except for" those times specifically granted to father is in effect the award of sole custody to mother with visitation to father instead of joint physical custody as specifically denominated in the judgment. Even if this issue had been properly preserved for appellate review, we fail to perceive how this custodial arrangement, wherein father was awarded custody periods including 171 to 175 overnight stays each year, awarded father insignificant periods of time and, thereby, did not meet the definition of joint physical custody. Section 452.375.1(3) defines "joint physical custody" as:

(3) **"Joint physical custody"** means an order awarding each of the parents significant, but not necessarily equal, periods of time during

essence, father claims that the trial court erred by insufficiently describing in the judgment the basis leading it to conclude that the particular custodial arrangement set forth in the judgment was in the best interest of the children, as required by § 452.375.6.

Courts are required to determine custody based on the best interests of the child. § 452.375.2. As a guide for making that determination, § 452.375.2 lists eight relevant factors for the court to consider. *Id.* If the parties cannot agree to a parenting plan, then under § 452.375.6, the court is required to include a written finding in its judgment detailing which specific relevant factors listed in § 452.375.2 it found controlling in determining that the custodial arrangement ordered by the court is in the best interest of the child. § 452.375.6. Likewise, if the court rejects a proposed custodial plan, it is also required to make a finding "detailing the specific relevant factors resulting in the rejection of such arrangement." *Id.* Because the parties in the case at bar could not agree to a custodial plan and each submitted a proposed parenting plan, both of which the court rejected, the court was required to issue written findings in its judgment related to each rejected plan and the court-ordered plan. *Id.*

Rule 78.07(c)[4] provides that "[i]n all cases, allegations of error relating to the form or language of the judgment, *including the failure to make statutorily re-*

*quired findings*, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Rule 78.07(c) (emphasis added). Therefore, father was required to file in the trial court a motion to amend the judgment in order to preserve for review his claims that the trial court did not adequately discuss in its written findings how the factors listed in § 452.375.2 related to its final custodial determination, and that the trial court did not state the factual basis for not granting him more custodial time. Rule 78.07(c); *In re Holland*, 203 S.W.3d 295, 301 (Mo. App.2006). The record before us is void of any indication that father filed a motion to amend the judgment raising these claimed deficiencies in the language of the judgment as related to the statutorily required findings under § 452.375.6. Father's counsel during oral argument candidly admitted that no such motion was filed by father.[5] Without such a motion, father failed to preserve his claims of error, and thereby waived them. *Id.* at 302; *Wilson–Trice v. Trice*, 191 S.W.3d 70, 72–3 (Mo. App.2006).

■ During the reply portion of his oral argument, father raised for the first time[6] his request that we exercise our discretion under Rule 41.06 to determine that the application of Rule 78.07(c) would work an injustice in this case and, therefore, should not bar our review of his claims. This rule provides that:

---

which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents[.]

**4.** Unless otherwise noted, all rule references are to Missouri Court Rules 2006.

**5.** Father's appellate counsel was not father's counsel in the trial court proceedings.

**6.** We note that the failure to raise this argument at an earlier time denied mother any opportunity to respond to it either by brief or argument. Ordinarily, we would not address an argument first raised at this point in the appeal process. However, father only made this argument in response to an inquiry from the court as to the applicability of Rule 78.07(c), an issue neither party briefed. Given this posture, our explanation why we reject the argument is appropriate.

Rules 41 to 101, inclusive, shall govern all proceedings in actions brought after their effective date, and also all further proceedings in actions then pending, *except to the extent that in the opinion of the court their application in a particular action pending when the Rules take effect* would not be feasible or *would work injustice, in which event the former procedure applies.*

Rule 41.06 (emphasis added).

In support of his request, father cites us to *Tipton v. Joseph–Tipton,* 173 S.W.3d 692 (Mo.App.2005). In *Tipton,* the mother challenged the lack of required findings mandated by § 452.375.6 in the custody judgment entered by the trial court on December 22, 2004. *Tipton,* 173 S.W.3d at 693. The court noted that the amendment to Rule 78.07(c), which added the phrase "including the failure to make statutorily required findings," became effective on January 1, 2005. *Id.* Also, before the entry of the judgment, the trial court informed the parties of its decision by docket entry, in response to which the father filed a motion advising the court of its obligation to make the required findings in its forthcoming judgment. *Id.* Although the trial court still retained jurisdiction over the judgment pursuant to Rule 75.01 on January 1, 2005, when the amended Rule 78.07(c) became effective, so that the mother had the opportunity to file a motion to amend the judgment as required by the amended Rule 78.07(c), the court determined that:

> Nonetheless, the circuit court's failure to act on [father's] warning that necessary findings of fact needed to be added to its judgment causes us to conclude that, had [mother] filed a motion to amend the judgment to include the missing findings of fact, the circuit court would have ignored it, too.

*Id.* at 694. Under these circumstances, the court concluded that the application of Rule 78.07(c) would work an injustice and, therefore, pursuant to Rule 41.06, the amended Rule 78.07(c) should not be applied to bar appellate review of the failure to make the statutorily required findings. *Id.*

The only similarity between the instant case and *Tipton* is that both cases were pending on January 1, 2005, the effective date of the amended Rule 78.07(c). Unlike *Tipton,* in the instant case, the pleadings upon which the case was tried were all filed after January 1, 2005, all discovery took place after that date, the trial occurred well after that date, and the judgment in question was entered almost a year after that date. Also, in the case at bar, there is nothing in the record to indicate that any party brought to the trial court's attention its obligation to make the findings required by § 452.375.6. In addition, father has failed to articulate how he was placed in a disadvantageous position attributable to the occurrence of the effective date of the amended Rule 78.07(c) while this case was pending. In other words, he is in the same position now as if this case had been filed on or after January 1, 2005, in which event the exception contained in Rule 41.06 would not have been applicable. For these reasons, the case at bar is clearly distinguishable from *Tipton.* Because the filing of father's counter-petition, the filing of mother's first amended petition, discovery, the trial of the case, and the entry of the judgment— essentially the litigation of the entire case—occurred after January 1, 2005, we do not perceive any injustice inuring to father as a result of amended Rule 78.07(c) becoming effective while this case was pending. Therefore, we conclude that the exception in Rule 41.06 does not provide father any relief from his failure to comply

with the requirements of Rule 78.07(c). Points one and two are denied.

### 3) *Point III—Failure to Rebut the Presumed Child Support Amount.*[7]

#### a) *Standard of Review*

■ Appellate review of a court-tried case falls under Rule 84.13(d). *Foster v. Village of Brownington,* 140 S.W.3d 603, 607 (Mo.App.2004). "Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support them, they are against the weight of the evidence, or the trial court erroneously declares or applies the law." *Stangeland v. Stangeland,* 33 S.W.3d 696, 700 (Mo.App. 2000). "When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence." *In re Marriage of T.B.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989). In a judge-tried proceeding, due regard is given to the opportunity of the trial court to have judged the credibility of witnesses. Rule 84.13(d). The trial court may believe all, part, or none of the testimony of witnesses. *T.B.G.,* 772 S.W.2d at 654.

■ "An award of child support is within the sound discretion of the trial court." *Bearce v. Lewey,* 182 S.W.3d 737, 741 (Mo.App.2006). On appeal, a child support award is reviewed for abuse of discretion and will be upheld unless it is arbitrary, unreasonable, or against the weight of the circumstances. *Id.* A child support award will not be disturbed unless the supporting evidence is "palpably insufficient." *Id.* (citation removed).

#### b) *Discussion*

■ "When a court determines child support in any proceeding, Rule 88.01 and § 452.340 require it to follow a two step procedure." *Davis v. Schmidt,* 210 S.W.3d 494, 506 (Mo.App.2007) (citation omitted). *See also Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996). Initially, the trial court determines the presumed child support amount by using Civil Procedure Form No. 14. *Id.; In re Matter of Cody Christian Emig,* 117 S.W.3d 174, 178 (Mo.App.2003). The use of Form 14 is mandatory in any proceeding where presumed child support is calculated. *Tuning v. Tuning,* 841 S.W.2d 264, 266–67 (Mo. App.1992); *Woolridge,* 915 S.W.2d at 379. In the second step, the court considers all relevant factors to determine whether the presumed child support amount under Form 14 is unjust or inappropriate. *Davis,* 210 S.W.3d at 506; *Woolridge,* 915 S.W.2d at 379. A party seeking to depart from the presumed support amount has the burden of showing that the presumed amount is unjust or inappropriate. *Samples v. Kouts,* 954 S.W.2d 593, 597 (Mo. App.1997); *Crews v. Crews,* 949 S.W.2d 659, 669 (Mo.App.1997).

■ Parents have a statutory duty to support their minor children commensurate with their ability to pay. § 452.340; *Gerlach v. Adair,* 211 S.W.3d 663, 669 (Mo.App.2007). The primary purpose of child support is to provide for the chil-

---

**7.** In the argument portion of his brief, father makes several references to contempt proceedings that occurred in this case in February of 2006. Our review, however, is limited to the judgment and the evidence supporting it for two reasons: First, father only appeals the judgment. He does not appeal any judg-ment from the contempt proceedings. Second, as father's counsel frankly conceded at oral argument, nothing that occurred in the contempt proceeding after the entry of the judgment bore any relevance to the issues raised in this appeal or the evidence supporting the judgment.

dren's welfare. *Weaks v. Weaks,* 821 S.W.2d 503, 507 (Mo. banc 1991); *Gerlach,* 211 S.W.3d at 669. In determining the proper amount of child support, the trial court must balance the obligated parent's ability to pay with the children's needs. *Id.*

Father claims that the trial court failed to properly undertake the second step in setting child support in that the presumed child support amount should have been rebutted as unjust or inappropriate. As his sole basis supporting this argument, father points out that the judgment found his monthly income exceeded his reasonable monthly expenses by only $474.00, and, therefore, he cannot pay any child support in excess of that amount.

Without citing any legal authority, father claims that knowingly awarding child support in excess of a party's ability to pay is an abuse of the trial court's discretion. Key to father's claim is the definition of "ability to pay." Under father's interpretation, "ability to pay" is defined as income minus all other expenses. For good reason, we believe that case law does not support this definition, for otherwise a parent could effectively avoid paying child support by simply increasing his or her own expenses to a level equivalent to his or her income. *See Welker v. Welker,* 902 S.W.2d 865, 868 (Mo.App.1995) (in determining ability to pay, focus is on whether individual after making required child support payment can meet remaining needs and obligations); *Ward v. Ward,* 762 S.W.2d 479, 480 (Mo.App.1988) (in determining proper child support amount when needs of child exceed income of the obligated parent, court must allocate as much as possible from the obligated parent's income while leaving the obligated parent enough income to reasonably support himself); *Oberg v. Oberg,* 869 S.W.2d 235, 238 (Mo.App.1993) (parent is obligated to pay

support to the extent the parent's circumstances reasonably permit).

Likewise, Rule 88.01 does not support father's mechanical and self-serving definition of ability to pay. Assumption number eight of Form 14, as adopted by Rule 88.01, provides that: "The schedule of basic child support obligations incorporates a 'self-support reserve' to address the need of the parent obligated to pay support to maintain a minimum standard of living." Rule 88.01. In order to override this assumption, father needed to produce evidence in the trial court of the nature and amount by which his particular support costs exceeded the "self-support reserve" attributed generally to people in his income level. In other words, the burden was upon father to prove that his expenses for his personal support exceeded the nature, amount, or both, of the expenses which an average person, earning the same amount of income as father, incurs in maintaining a minimum standard of living. No such evidence was presented by father.

In addressing father's expenses over and above those necessary for him to maintain a minimum standard of living, we note that: "It was not the trial court's business, and it is not ours, to show how [father's] income can be made to cover his debts and current expenses." *Cash v. Cash,* 812 S.W.2d 265, 267 (Mo.App.1991). Rather, it is father's place to "adjust income or obligations, or both, in such a way as to provide the payment of the child support he is ordered to pay." *Id. See also In re Marriage of Buckman,* 857 S.W.2d 313, 318 (Mo.App.1993) (upholding award despite obligor's claim that his total monthly expenses, excluding child support payments, exceeded his monthly income); *State ex rel. Cote v. Kelly,* 978 S.W.2d 812, 815–16 (Mo.App.1998).

In determining whether to rebut the presumed child support amount, the trial court must consider "all relevant factors."

Rule 88.01(b). Comment G to Line 12 of Form 14, as adopted by Rule 88.01, also provides:

In a proceeding to establish a child support order or to modify the support payable under an existing order, when determining whether to deviate from the presumed child support amount (line 12), the court or administrative agency should consider all relevant factors, including whether:

(1) A child receives income that is not based on the child's special needs;

(2) A parent has significant extraordinary medical expenses for himself or herself or for a relative by blood or marriage;

(3) The parents' combined adjusted monthly gross income (line 3) exceeds $20,000.00 per month, or the number of children who are the subject of the proceeding exceeds six;

(4) The parent obligated to pay support incurs significant or unusual expenses in connection with transportation of himself or herself or any child who is the subject of the proceeding for exercise of any periods of overnight visitation or custody; and

(5) The presumed child support amount calculated from the combined income of the parent entitled to receive support and the parent obligated to pay support is greater than the presumed child support amount calculated from only the income of the parent obligated to pay support.

Father produced no evidence of the existence of any of the five specifically enumerated factors. Father also failed to direct us to any other factors, other than his perceived inability to pay, which support a determination that the presumed child support amount was unjust and inappropriate.

Other than the alleged disparity between the amount by which his income exceeds his expenses and the amount of the presumed child support, father points to nothing in the record to indicate that, in not rebutting the presumed child support amount, the trial court failed to consider his ability to contribute to the payment of child support. Without evidence to the contrary, we can infer that the trial court considered father's ability to pay in making the specific finding that the presumed child support amount was not unjust or inappropriate. *Elliott v. Elliott*, 920 S.W.2d 570, 577 (Mo.App.1996). Thus, in accepting the Form 14 amount as proper, the trial court implicitly held that father failed to carry his burden of proving that the presumed amount was unjust or inappropriate.

Father's child support payments constitute 30% of his income. This award is not inconsistent with other awards that have been affirmed. *See Welker*, 902 S.W.2d at 869 (affirming award of 33% of obligated parent's income); *Wilson–Trice*, 191 S.W.3d at 73 (affirming award constituting 31% of obligated parent's income); *In re Marriage of York*, 185 S.W.3d 794, 799 (Mo.App.2006) (affirming child support and maintenance award amounting to 38% of obligated parent's income).

Viewing the evidence in the light most favorable to the trial court's decision, we cannot say that its refusal to find the Form 14 child support amount unjust or inappropriate was an abuse of discretion. Point three is denied.

### 4) *Decision*

The judgment is affirmed.

BATES, P.J./C.J., and BARNEY, J., concur.