

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

IN THE INTEREST OF:  A.O.B.

)  No. ED110921
)
)  Appeal from the Circuit Court of
)  St. Charles County
)
)  Honorable Rebeca M. Navarro-McKelvey
)
)
)  Filed: April 25, 2023

### Introduction

K.L.V. ("Mother") and A.L.B. ("Father") (together, "Parents"), appeal the trial court's judgment terminating their parental rights of their child, A.O.B. ("Child"). Parents raise three points on appeal. In Points I and II, Parents argue the trial court lacked clear, cogent, and convincing evidence to support the grounds for termination under sections 211.447.5(3), failure to rectify and 211.447.5(5), parental unfitness.[1] In Point III, Parents contend the trial court abused its discretion finding it was in Child's best interests to terminate Parents' parental rights under section 211.447.7 because the evidence relied on by the trial court was inconsistent with the evidence presented at trial.

Because the trial court's findings were supported by clear, cogent, and convincing evidence, the trial court did not err in finding the grounds for termination of Parents' parental

---

[1] All statutory references are to RSMo Supp. 2018, unless otherwise indicated.

rights under section 211.447.5(3), failure to rectify. We deny Point I. Because the trial court's judgment was not so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, the trial court did not abuse its discretion finding it was in Child's best interests to terminate Parents' parental rights under section 211.447.7. We deny Point III. Because Points I and III, failure to rectify and best interests, constitute sufficient grounds to affirm the termination of Parents' parental rights, we need not address Point II, concerning parental unfitness.

We affirm.

## Factual and Procedural Background

Child was born on February 19, 2020, in St. Charles County, Missouri. At birth, Child tested positive for fentanyl and benzodiazepine and exhibited signs of withdrawal. Additionally, at the time of Child's birth, Mother tested positive for cocaine, fentanyl, and benzodiazepine, and admitted to recent heroin use. On February 20, 2020, Parents were found unconscious in the bathroom of the hospital where Child was born. Due to Child being born drug-exposed and concerns regarding Parents' substance abuse, on February 24, 2020, the trial court issued an order to take Child into judicial custody. On February 27, 2020, the trial court held a protective custody hearing and found the continuation of Child in the home was not in Child's best interests. On July 7, 2020, the trial court issued its order of adjudication transferring Child to the Missouri Department of Social Services, Children's Division (the "Division") under section 211.031, RSMo 2016. In this order, the trial court found Mother neglected Child by failing to provide an environment free of chemical abuse based on Child's positive drug tests at birth, Child's signs of withdrawal at birth, Mother's positive drug tests at the time of Child's birth, Mother admitting to recent heroin use at the time of Child's birth, and Mother's lack of suitable

2

housing when child was taken into judicial custody. Father's paternity was not established at the time of the adjudication hearing, and the trial court found Father would not be an appropriate placement due to Father's self-reported use of heroin and unprescribed Xanax. Father's paternity has since been established and Child's birth certificate was amended. On July 13, 2020, the trial court issued its order of disposition and ordered written service plans for Parents.

On November 19, 2021, the Juvenile Officer of St. Charles County, Missouri (the "Officer") filed a termination of parental rights petition ("TPR"). On December 20, 2021, a status hearing was held within thirty days of filing the TPR and an order was issued under section 211.455, RSMo 2016. The trial court ordered the Division to investigate and prepare a social study report. The Division filed the social study report on February 7, 2022. A trial took place on May 10, 2022, after two continuances requested by Parents. The trial court heard testimony from the former parent aide, previous Division case manager, Mother, Father, and Child's guardian ad litem. The guardian ad litem testified to her recommendation and stated it was in the best interests of Child to terminate Parents' parental rights. Additionally, nine exhibits were admitted into evidence by the Officer, including Child's birth certificate, the social study/investigation, Division's case narratives, Averhealth business records regarding Mother, Center for Life Solutions business records regarding Mother, Queen of Peace Center business records regarding Mother, Averhealth business records regarding Father, Center for Life Solutions business records regarding Father, Center for Life Solutions business records regarding Father, and St. Louis County Circuit Court certified records regarding Father. On July 14, 2022, the trial court entered its findings of fact and conclusions of law terminating Parents' parental rights.

This appeal follows.

**Standard of Review and Underlying Law**

In a termination of parental rights case, we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Interest of K.A.M.L.*, 644 S.W.3d 14, 20 (Mo. App. E.D. 2022) (citing *S.S.S. v. C.V.S.*, 529 S.W.3d 811, 815 (Mo. banc 2017)). The judgment will be reversed only if we are left with a firm belief the judgment is wrong. *Interest of D.L.P.*, 638 S.W.3d 82, 88 (Mo. App. E.D. 2021) (citing *In re S.Y.B.G.*, 443 S.W.3d 56, 59 (Mo. App. E.D. 2014)). The evidence is viewed in the light most favorable to the trial court's judgment. *Interest of K.A.M.L.*, 644 S.W.3d at 20 (citing *In re S.Y.B.G.*, 443 S.W.3d at 59). We defer to the trial court's credibility assessments. *Interest of D.L.P.*, 638 S.W.3d at 88 (citing *In re S.Y.B.G.*, 443 S.W.3d at 59). We recognize the trial court is better positioned to determine witness credibility and weigh evidence in the context of the whole record. *Interest of K.A.M.L.*, 644 S.W.3d at 20 (citing *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014)). The party seeking termination bears the burden of proof in a termination of parental rights proceeding. *Id.* (citing *In re S.Y.B.G.*, 443 S.W.3d at 59).

A court's decision to terminate parental rights "is an exercise of awesome power we do not review lightly." *Interest of T.M.L.*, 615 S.W.3d 100, 103 (Mo. App. E.D. 2020) (quoting *In re J.R.*, 347 S.W.3d 641, 645 (Mo. App. E.D. 2011)). "A parent's right to raise her children is a fundamental constitutional right." *Interest of D.L.P.*, 638 S.W.3d at 88. In terminating parental rights, a court must conduct a two-step analysis. *Id.* (citing *In re S.Y.B.G.*, 443 S.W.3d at 59).

First, "the trial court must find clear, cogent, and convincing evidence to support at least one of the statutory grounds set forth in [s]ection 211.447." *In Interest of K.M.A.-B.*, 493 S.W.3d 457, 467 (Mo. App. E.D. 2016) (citing *In re K.A.W.*, 133 S.W.3d 1, 9 (Mo. banc 2004)).

4

Evidence is "clear, cogent, and convincing" if it "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the trier of fact is left with an abiding conviction that the evidence is true." *Interest of D.L.P.*, 638 S.W.3d at 89 (quoting *In re S.Y.B.G.*, 443 S.W.3d at 59). "This standard may be satisfied even when evidence contrary to the trial court's finding is presented or the evidence might support a different conclusion." *Id.* (citing *In re S.Y.B.G.*, 443 S.W.3d at 59).

Second, "[i]f the trial court finds at least one of the statutory grounds for termination exists," it must "determine whether, by a preponderance of the evidence, the termination of parental rights is in the child's best interest[s]." *Id.* (citing *In re S.Y.B.G.*, 443 S.W.3d at 59). Determining a child's "best interests" is "a subjective assessment based on the totality of the circumstances." *Id.* (citing *In re S.Y.B.G.*, 443 S.W.3d at 59). "We review the trial court's best interest[s] determination for an abuse of discretion." *Id.* (citing *In re S.Y.B.G.*, 443 S.W.3d at 59). A trial court abuses its discretion when its ruling is "clearly against the logic of the circumstances and so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (citing *In re S.Y.B.G.*, 443 S.W.3d at 59). "If reasonable minds can differ about the propriety of the trial court's ruling, there was no abuse of discretion." *Interest of J.G.W.*, 613 S.W.3d 474, 479 (Mo. App. E.D. 2020) (quoting *G.J.R.B. v. J.K.B.*, 269 S.W.3d 546, 556 (Mo. App. S.D. 2008)). "We are not permitted to substitute our judgment for that of the trial court, but must abide by its decision so long as reasonable minds may differ about the propriety of its ruling." *Id.* (quoting *G.J.R.B.*, 269 S.W.3d at 556).

## Discussion

In Points I and II, Parents argue the trial court lacked clear, cogent, and convincing evidence to support the grounds for termination under sections 211.447.5(3) failure to rectify and

211.447.5(5) parental unfitness. In Point III, Parents contend the trial court abused its discretion terminating their parental rights under section 211.447.7 because the evidence relied on by the trial court was inconsistent with the evidence adduced at trial. Because Points I and III, failure to rectify and best interests, constitute sufficient grounds to affirm the termination of Parents' parental rights, we need not address Point II, parental unfitness. *See Interest of K.A.M.L.*, 644 S.W.3d at 22.

Section 211.447 provides the statutory grounds for judicial termination of parental rights. *Interest of K.A.M.L.*, 644 S.W.3d at 22–23. The trial court found grounds existed for the termination of Parents' parental rights under sections 211.447.5(3) failure to rectify and 211.447.5(5) parental unfitness. Even though these are separate grounds for termination, we will affirm the trial court's ruling if one is appropriate. *Id.* at 23 (citing *Mo. Dep't of Soc. Servs., Children's Div. v. B.T.W.*, 422 S.W.3d 381, 394 (Mo. App. W.D. 2013)) ("[O]nly one statutory ground need be proven to support termination[.]").

*Point I: Section 211.447.5(3) Failure to Rectify*

Under section 211.447.5(3), for parental rights to be terminated, the court must have jurisdiction over the child for one year. Here, legal custody of Child has been with the Division continuously since Child entered care on February 24, 2020. Additionally, under section 211.447.5(3), it must be determined:

> The conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist; and that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

*Id.* (quoting § 211.447.5(3)). In determining whether to terminate parental rights under 211.447.5(3), the court must consider and make findings on these factors:

6

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division, or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody, and control;

(d) A chemical dependency which prevents the parent from consistently providing the necessary care, custody, and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody, and control(.)

*Id.* (quoting § 211.447.5(3)). "These factors 'are not separate grounds for termination by themselves, but rather categories of evidence that the court may consider along with all other relevant evidence in determining whether grounds for termination exist under [s]ection 211.447.5(3).'" *Id.* (quoting *In Interest of K.M.A.-B.*, 493 S.W.3d at 474). Even though a court must make findings on all four factors, "evidence supporting just one factor is sufficient to terminate parental rights." *Id.* (citing *Interest of D.L.P.*, 638 S.W.3d at 90–91).

(a) Social Service Plan Compliance & (b) Agency Efforts

Parents argue because the Division failed to "properly assist Mother and Father with providing realistic services and referrals for their situation," they could not sufficiently comply with the service plan. Specifically, Parents contend even though they were seeking treatment, the agency "would not approve any services through Center For Life Solutions because it was a methadone clinic." Mother and Father's service plans required more than seeking treatment. Mother and Father, in separate service plans signed on July 13, 2020, were ordered to: sign all needed releases of information within seventy-two hours of the Division's request and meet with

7

the Division's case manager at least once a month; have a safety network with no less than three people and develop a safety plan; maintain regular, consistent contact with Child; ensure interactions with Child do not result in any harm to Child; maintain housing free of substances, safe, clean, and appropriate and allow the Division to verify housing conditions while Child is in foster care; and demonstrate sobriety while the child is in foster care by completing regular, random drug screens, and successfully complete a substance abuse evaluation and follow all recommended treatment at a court-approved treatment program.

As to the releases and meeting with the Division case manager, the former and current Division case managers testified they requested Mother sign three releases. They testified Mother only signed one and did not do so within the required seventy-two hours. They also testified Mother failed to meet with either of them at least once per month. Regarding Father, the Division case managers testified Father signed all the releases requested of him, but he did not meet with either of them at least once per month.

As to maintaining regular, consistent contact with Child, Mother and Father visited Child sixty-eight out of the ninety-five visits offered to them, about a 71.6% visitation rate. Of the visits Mother and Father attended, the former parent aide and current Division case manager testified Mother and Father were frequently late. Additionally, the record shows during the pendency of the case, Mother and Father's visitation did not increase from the one hour a week supervised visits as initially offered.

As to maintaining and allowing the Division to verify housing conditions, the former Division case manager testified she viewed the inside of Mother and Father's home only once during a virtual visit, but could only see part of the living room. The current Division case

manager testified at no time did Mother or Father allow her into the home to verify housing conditions, despite repeated attempts to schedule home visits.

As to demonstrating sobriety by completing drug screens, a substance abuse evaluation, and following a recommended, court-approved treatment program, neither Mother nor Father completed a requested drug screen or substance abuse evaluation. Additionally, neither Mother nor Father demonstrated sustained sobriety or successful completion of a substance abuse treatment program.

Parents argue they were seeking treatment at Center for Life Solutions, a methadone treatment clinic, but the Division would not approve these services. So, parents argue the Division did not provide them with necessary services to work toward unification. Father testified he did not take the required drug tests because he would test positive given his participation in the methadone clinic. Contrary to Parents' argument, the trial court, Division, and Officer made reasonable efforts to consider Parents' treatment at Center for Life Solutions. For example, the trial court offered Parents a hair follicle test, paid for by the Division, to show methadone was the only drug they were ingesting. Parents refused. Additionally, the trial court considered Parents' participation in the methadone clinic. Based on the records from Center for Life Solutions, Mother frequently missed group counseling meetings and separately tested positive for cocaine, fentanyl, and opiates. Based on the records from Center for Life Solutions, Father missed several methadone doses and separately tested positive for cocaine and fentanyl. Additionally, records indicate Mother did not start treatment at Center for Life Solutions until February or April 2021, but still failed to submit any drug tests as required by her service plan issued July 13, 2020. So, even though Medication Assisted Treatment, with methadone, is a treatment program available to people struggling with addiction, records indicate Parents failed

to comply with its treatment requirements missing meetings, missing doses, and/or testing positive for other substances. *See Medication Assisted Treatment*, Mo. Dep't Mental Health, https://dmh.mo.gov/behavioral-health/medication-assisted-treatment (last visited Apr. 14, 2023); *see also* CSR tit. 9, § 30-3.132 (detailing rules applying to certified opioid treatment programs).

Thus, while Mother and Father may have partially fulfilled aspects of their service plans, based on the record, the trial court had sufficient evidence to find Mother and Father failed to comply with their service plans and the Division made reasonable efforts to reunify Child with Mother and Father. *See Interest of K.A.M.L.*, 644 S.W.3d at 22.

## (c) Mental Condition

Neither party disputed the trial court's finding no evidence was offered to indicate either parent suffered from a mental condition that was irreversible or that rendered him incapable of knowingly providing for Child.

## (d) Chemical Dependency

Parents argue even though the trial court found Mother and Father suffered from a chemical dependency, it failed to make the statutorily required finding "if her dependency is treatable." To preserve for appellate review the trial court's failure to make statutory findings in a termination judgment, an appellant must move to amend the judgment under Rule 78.07(c). *Interest of D.L.P.*, 638 S.W.3d at 95 (citing *In re Holland*, 203 S.W.3d 295, 301 (Mo. App. S.D. 2006)). Rule 78.07(c) applies to termination of parental rights cases. *Id.* (citing *J.A.R.*, 426 S.W.3d at 626 n.5). The claimed error is not preserved unless a motion to alter or amend the judgment is filed, specifically challenging the language of the judgment, including failing to make findings mandated by statute. *Id.* (citing *Holland*, 203 S.W.3d at 302). Courts have held this issue is not preserved where the record is "void of any indication" the issue was raised in the

10

motion to amend the judgment. *Id.* (quoting *In re Marriage of Bottorff*, 221 S.W.3d 482, 485 (Mo. App. S.D. 2007)). The issue is preserved where an appellant files a motion putting the trial court "on notice" of an alleged error relating to the form or language of the judgment. *Id.* at 95–96 (quoting *Stuart v. Ford*, 292 S.W.3d 508, 517 (Mo. App. S.D. 2009)). Here, there is no indication Parents raised the issue in any motion following the judgment. So, Parents' claim regarding the trial court's failure to find if their chemical dependencies were untreatable is not preserved. *Id.*

Parents further argue even if the trial court made this determination, the Officer did not present enough evidence for the trial court to find either Parent has a chemical dependency that cannot be treated. "Chemical dependency is of sufficient severity to support termination only if it (1) 'prevents the parent from consistently providing the necessary care, custody and control over the child' and (2) 'cannot be treated so as to enable the parent to consistently provide such care, custody and control.'" *In Interest of K.M.A.-B.*, 493 S.W.3d at 469 (quoting *In re K.A.W.*, 133 S.W.3d at 11). "There must be evidence that the parent has an untreatable addiction that renders the parent unable to adequately care for the children." *Id.* Here, Mother failed to submit to any ordered drug screens, failed to submit to a substance abuse evaluation, testified she has a drug problem and is addicted to opiates, failed multiple inpatient and outpatient treatment programs, and failed medication assisted recovery with methadone testing positive for other controlled substances on multiple occasions. As documented by the trial court, Mother's treatment record illustrates her ongoing chemical dependency.

Mother first began residential treatment at Queen of Peace on March 3, 2020, but left March 7, 2020. Mother began outpatient treatment at Queen of Peace in April 2020, but continued to use drugs. In May 2020, Mother requested to be admitted for inpatient treatment at

Queen of Peace and was provided a bed date of May 19, 2020, but failed to go into treatment on that date. The records show Mother was still actively using in June 2020, when she entered Queen of Peace's residential treatment program again on June 9, 2020. But, Mother left residential treatment on June 10, 2020. Mother continued to reach out for outpatient treatment and the records show she informed Queen of Peace counselors of her intent to go to a detox facility, but no evidence was presented indicating whether Mother did so. Mother was still using fentanyl in July of 2020, and again requested entry into Queen of Peace's residential treatment program but was not permitted to enter. In February 2021, Mother attended some group counseling through Center for Life Solutions, and a report for April 2021, indicates Mother was continuing to use fentanyl daily, despite being on a daily methadone regimen at Center for Life Solutions. Records indicate Mother missed several counseling meetings throughout May and June 2021. Mother continued to test positive through most of her treatment at Center for Life Solutions. In November 2021, Mother was still actively using drugs and resumed outpatient treatment with Queen of Peace. The trial court noted Mother's last contact with Queen of Peace was in December 2021, and the trial court remained unaware of Mother's sobriety status due to her failure to submit to the required drug tests.

Father failed to submit to any ordered drug screens, failed to submit to a substance abuse evaluation, testified he is addicted to heroin and has struggled with addiction for at least ten years (his substance abuse treatment records indicate he has suffered from heroin addiction for twenty-seven years), and failed medication assisted recovery with methadone testing positive for other controlled substances on multiple occasions. As documented by the trial court, Father's treatment record also illustrates his chemical dependency. Records show Father was provided methadone as a part of his treatment. But, on several occasions, Father failed to show up for his

12

methadone dose, particularly in November 2021, and January 2022. Drug screens administered at Center for Life Solutions indicate Father tested positive for cocaine, opiates, and fentanyl throughout his treatment. Father tested positive on November 30, 2021, nine months into methadone treatment. Records indicate Father failed to take any drug screens for January 2022 at Center for Life Solutions and was absent for his daily methadone dose at least six times that month. Based on the record, there was sufficient evidence to show Parents have an untreatable addiction that renders them unable to adequately care for Child. *Id.*

Thus, because the trial court's findings were supported by clear, cogent, and convincing evidence, the trial court did not err in finding the grounds for termination of Parents' parental rights under section 211.447.5(3) failure to rectify. *Interest of K.A.M.L.*, 644 S.W.3d at 25.

Point I is denied.

*Point III: Section 211.447.7 Best Interests Determination*

Once the trial court identifies grounds for termination of parental rights, it must then analyze the seven factors under section 211.447.7 and determine whether termination is in the child's "best interest[s]." *Interest of K.A.M.L.*, 644 S.W.3d at 25. The seven factors courts evaluate in the "best interests" determination are:

(1) Emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years;

provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

*Id.* (quoting § 211.447.7).

"'There is no requirement, statutory or otherwise, that all seven of these factors must be negated before termination can take place; likewise, there is no minimum number of negative factors necessary for termination.'" *Interest of A.M.W.*, 652 S.W.3d 225, 244 (Mo. App. W.D. 2022), *transfer denied* (July 26, 2022), *transfer denied* (Oct. 4, 2022) (quoting *In re B.J.H.*, 356 S.W.3d 816, 834 (Mo. App. W.D. 2012)). Determining a child's "best interests" is "a subjective assessment based on the totality of the circumstances." *Interest of D.L.P.*, 638 S.W.3d at 89 (citing *In re S.Y.B.G.*, 443 S.W.3d at 59). "[I]t is the trial court's duty to weigh the evidence presented relating to best interests, and this Court will not reweigh that evidence." *Interest of C.E.B.*, 565 S.W.3d 207, 218 (Mo. App. S.D. 2018) (*In the Interest of A.R.T.*, 496 S.W.3d 610, 618 (Mo. App. S.D. 2016)).

As to Mother, the trial court made these findings on the best interests of Child:

1. Emotional ties: The Court finds that the child has some emotional ties to [Mother], but whatever little emotional ties the child may have to [Mother] are insufficient to override the child's need for a permanent and stable home and insufficient to warrant maintaining the legal relationship between the child and [Mother].

2. Visitation: While [Mother] has visited with the child with some consistency, she has frequently been late to visits with the child and has missed multiple visits. Furthermore, in 26 months, she only the saw the child for 1 hour a week[.]

3. Financial support: While [Mother] has provided some contributions for the care and maintenance of the child during the child's time in care, being snacks, drinks, clothes, and holiday items, such contributions are insufficient to override the child's need for a permanent and stable home and insufficient to warrant maintaining the legal relationship between the child and [Mother]. The record indicates she has not had employment in 6 years, and it is unclear how she would support the child's needs.

14

4. Additional services: [Mother] has been given the opportunity to receive services throughout this case and has been provided referrals to complete these services. There are no additional services which would be likely to bring about any lasting parental adjustment to enable a return of the child to [Mother] in the near future. [Mother] would need to sufficiently comply with her Written Service Plan in order to be reunified with the child. [Mother] has not previously availed herself of available services through the Children's Division, therefore reunification could not take place in the near future thereby delaying permanency for the child which is detrimental to the child's well-being.

5. Interest in the child: [Mother] has demonstrated a lack of interest in and commitment to the child. The child has been in case for approximately twenty-six (26) months and [Mother] has failed to sufficiently comply with her Written Service Plan in order to be reunified with the child. This lack of compliance demonstrates a lack of interest in the child and a lack of commitment toward reunification with the child.

6. Felony convictions: [Mother] was certified as adult in the State of Wisconsin and was convicted of 1st Degree attempted Intentional Hom[i]cide, Use of a Dangerous Weapon, and Party to a Crime.

7. Deliberate act creating risk of harm: No evidence was offered to indicate there have been deliberate acts of [Mother] or of another which [Mother] knew or should have known subjected the child to a substantial risk of physical or mental harm. However, [Mother's] failure to submit to drug screens or complete a Substance Abuse Evaluation, and evidence of her continued drug use places the child at great risk of physical harm or emotional harm in that [Mother] would be unable to properly supervise the child, take care of the child's daily needs and look out for the child's health and safety if under the influence of drugs.

As to Father, the trial court made these findings on the best interests of Child:

1. Emotional ties: The Court finds that the child has no emotional ties to [Father]. Further, whatever little emotional ties the child may have to [Father] as father are insufficient to override the child's need for a permanent and stable home and insufficient to warrant maintaining the legal relationship between the child and [Father].

2. Visitation: While [Father] has visited with the child with some consistency, he has frequently been late to visits with the child and has missed multiple visits.

3. Financial support: While [Father] has provided some contributions for the care and maintenance of the child during the child's time in care, being snacks, drinks, clothes, and holiday items, such contributions are insufficient to override the child's need for a permanent and stable home and insufficient to warrant maintaining the legal relationship between the child and [Father]. The evidence showed that [Father's] last employment was 8 years ago, and it is uncertain he would support the needs of the child.

4. Additional services: [Father] has been given the opportunity to receive services throughout this case and has been provided referrals to complete these services. There are no additional services which would be likely to bring about any lasting parental adjustment to enable a return of the child to [Father] in the near future. [Father] would need to sufficiently comply with his Written Service Plan in order to be reunified with the child. [Father] has not previously availed himself of available services through the Children's Division, therefore reunification could not take place in the near future thereby delaying permanency for the child which is detrimental to the child's well-being.

5. Interest in the child: [Father] has demonstrated a lack of interest in and commitment to the child. The child has been in case for approximately twenty-six (26) months and [Father] has failed to sufficiently comply with his Written Service Plan in order to be reunified with the child. This lack of compliance demonstrates a lack of interest in the child and a lack of commitment toward reunification with the child.

6. Felony convictions: [Father] has been convicted of numerous felonies including multiple counts of Tampering With Service Utility 1st Degree, Stealing a Motor Vehicle, and Felony Stealing.

7. Deliberate act creating risk of harm: No evidence was offered to indicate there have been deliberate acts of [Father] or of another which [Father] knew or should have known subjected the child to a substantial risk of physical or mental harm. However, [Father's] failure to submit to drug screens or complete a Substance Abuse Evaluation places the child at great risk of physical harm or emotional harm in that [Father] would be unable to properly supervise the child, take care of the child's daily needs and look out for the child's health and safety if under the influence of drugs.

First, Parents argue the trial court abused its discretion finding it was in Child's best interests to terminate Parents' parental rights because "the evidence relied on by the trial court was inconsistent with the evidence adduced at trial to the extent that it was against the logic of the circumstances and so unreasonable and arbitrary as to shock this court's sense of justice." Parents' argument is without merit because Parents "simply highlight[] evidence conflicting with the trial court's judgment." *Interest of J.G.W.*, 613 S.W.3d at 488. "The trial court does not have to discuss evidence favorable to [Parents]; 'rather, . . . its judgment must include findings on the factors such that a reviewing court can be assured the trial court properly considered the statutory factors in deciding whether to terminate parental rights.'" *Id.* (quoting *In re A.S.O.*, 52 S.W.3d

16

59, 66 (Mo. App. W.D. 2001)). Additionally, "[i]n termination of parental rights cases, we defer to the trial court's ability to choose between conflicting evidence." *Id.* (quoting *A.A.R.*, 39 S.W.3d 847, 850 (Mo. App. W.D. 2001)). As set forth in the trial court's judgment, the trial court considered the best interests factors and the record, which support its findings.

Second, Parents state section 211.447.7 requires the trial court to "evaluate and make findings." Parents argue the trial court made findings, but failed to evaluate certain factors in light of the best interests of Child. Specifically, Parents argue the trial court failed to evaluate the visitation and contact factor, the financial contributions or support factor, the additional services factor, and the parental disinterest factor. Parents cite no authority explaining the procedural difference between "evaluating" and "making findings," demonstrating the trial court's written judgment was in error. Even then, the trial court adhered to the statute. Section 211.447.7 states the trial court "shall evaluate and make findings on the [best interests] factors, when appropriate and applicable to the case . . . ." In other words, "[s]ection 211.447.7 does not require specific findings with respect to each of its subparagraphs." *In re S.M.F.*, 393 S.W.3d 635, 652 (Mo. App. W.D. 2013) (citing *In re A.S.O.*, 52 S.W.3d at 67). Rather, the trial court is only required to "make findings on the prongs 'when appropriate and applicable to the case.'" *Id.* (first quoting *In re A.S.O.*, 52 S.W.3d at 67; then quoting § 211.447.7). Here, as detailed above, the trial court made findings on each of the seven factors.

Third, Parents argue the trial court failed to make specific findings under the additional services factor concerning what services were offered, what services were engaged, which ones were declined, why the methadone program would be inappropriate treatment, and under the felony convictions factor concerning if the Parents' offenses were of such a nature Child would be deprived of a stable home for a period of years. As explained, to preserve for appellate review

17

the trial court's failure to make statutory findings in a termination judgment, an appellant must move to amend the judgment under Rule 78.07(c). *Interest of D.L.P.*, 638 S.W.3d at 95 (citing *In re Holland*, 203 S.W.3d at 301). Rule 78.07(c) applies to termination of parental rights cases. *Id.* (citing *J.A.R.*, 426 S.W.3d at 626 n.5). The claimed error is not preserved unless a motion to alter or amend the judgment is filed, specifically challenging the language of the judgment, including the failure to make findings mandated by statute. *Id.* (citing *Holland*, 203 S.W.3d at 302). Courts have held this issue is not preserved where the record is "void of any indication" the issue was raised in the motion to amend the judgment. *Id.* (quoting *In re Marriage of Bottorff*, 221 S.W.3d at 485). The issue is preserved where an appellant files a motion putting the trial court "on notice" of an alleged error relating to the form or language of the judgment. *Id.* at 95–96 (quoting *Stuart*, 292 S.W.3d at 517). Here, there is no indication Parents raised the issue in any motion following the judgment. So, Parents' claim regarding the trial court's failure to make such findings is not preserved. *Id.*

Based on the record before us, "reasonable minds can differ as to whether termination of [Parents'] parental rights was in the best interests of [Child]." *Interest of J.G.W.*, 613 S.W.3d at 490 (citing *G.J.R.B.*, 269 S.W.3d at 556). Thus, we cannot find the trial court's decision was "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 490–91 (quoting *In the Interest of A.R.T.*, 496 S.W.3d at 618).

Point III is denied.

### Conclusion

We affirm the judgment of the trial court.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.

18