

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| JONATHAN HERETH, | ) |
| | ) |
| Respondent, | ) |
| | ) WD87174 |
| v. | ) |
| | ) OPINION FILED: |
| | ) April 29, 2025 |
| BRANDY HERETH, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jeffrey C. Keal, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Ms. Brandy Hereth ("Mother") appeals the judgment entered by the Circuit Court

of Jackson County, Missouri ("trial court"), following a bench trial, which modified the

prior parenting plan and awarded child support to Mr. Jonathan Hereth ("Father"). We

affirm in part and reverse in part.

## Facts and Procedural History[1]

Mother and Father's marriage was originally dissolved in 2015. At that time, the parties had two minor children,[2] who were three and four years old. After the dissolution, both parties continued to reside in the Kansas City area, sharing joint custody. In 2021, Mother filed a motion to relocate with the children to Boston to accept a job, which Father opposed. While the motion was pending, Mother moved to Boston and began working while Father remained in Kansas City with the children.

Before trial in June 2023, Mother, Father, and the guardian ad litem ("GAL") each proposed a parenting plan.

Father's proposed parenting plan provided that the children would primarily reside with him in Kansas City and that Mother would have parenting time for at least one weekend every month in Kansas City and additionally for roughly half of the children's summer break. Father completed a Form 14 based on this proposed plan, which imputed $3,500 in monthly income to Mother and reported $6,236 in monthly income for himself. On Line 6e of the Form 14, the place for extraordinary child-rearing costs, Father listed $0 for both parties. Father's Form 14 calculation yielded a presumed child support award ("PCSA") of $545 per month to be paid by Mother to Father.

---

[1] "In the appeal of [a] bench-tried case, the appellate court views the facts in the light most favorable to the trial court's judgment." *M.D.P.-W. by B.N.W. v. M.P.*, 684 S.W.3d 357, 358 n.1 (Mo. App. W.D. 2024) (alteration in original) (quoting *Hampton v. Llewellyn*, 663 S.W.3d 899, 901 n.1 (Mo. App. W.D. 2023)).

[2] Pursuant to the directive of section 509.520.1(7) (Supp. IV 2024), we do not use the names of any minors in this opinion. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through April 25, 2024, unless otherwise indicated.

The GAL's proposed parenting plan had an identical schedule for parenting time, but it recommended that neither party receive child support payments while also leaving each party responsible for the entirety of their travel expenses.

Mother's Form 14 calculation, based on her parenting plan,[3] yielded a PCSA of $276 to be paid by Father to Mother.

In June 2023, the parties appeared for a bench trial. At trial, Mother submitted receipts for her travel expenses related to exercising her parenting time with the children, including flights, hotels, and rental cars. Mother prepared a summary totaling her parenting-related travel expenses for 2021-23 and, based on these past expenses, Mother estimated that her future parenting-related travel expenses would average $1,875 per month.

On December 29, 2023, the trial court entered judgment ordering a parenting plan following the schedule of parenting time proposed by Father and the GAL. The trial court adopted Father's Form 14 calculation, including his assertion that neither party would incur extraordinary child-rearing expenses, and agreed that Father properly calculated the PCSA of $545: "The Court accepts [Father's] Form 14 and finds the presumed correct amount due and owing to the Petitioner is $545.00 per month retroactive to . . . April 1, 2021." The trial court further noted that it found the amount to be reasonable and just under the circumstances, even after considering all the factors required by statute and the Form 14 guidelines. The trial court also ordered, in relevant

---

[3] The details of Mother's proposed parenting plan are not relevant to this appeal. However, it deviated significantly from the ordered parenting plan.

part, that Mother would be responsible for the entirety of her travel expenses related to her parenting time and for half of all of the children's education expenses—in addition to paying the PCSA to Father.

In her post-judgment motion to amend the judgment or for new trial, Mother raised objections to the trial court's judgment. In relevant part, she argued the trial court's refusal to rebut the PCSA as unjust was an abuse of discretion because she had produced the receipts as evidence to support her claim that she would continue paying an average of $1,875, over half of her imputed income, in monthly travel expenses. She also argued that the trial court misapplied the law by ordering her to pay for half of all the children's education expenses in addition to paying the PCSA. On April 25, 2024, the trial court modified its judgment but made no changes with respect to Mother's challenge to the PCSA and the terms of the judgment relating to the children's educational expenses.

Mother timely appealed the judgment and now raises two points on appeal. In Point I, Mother argues the trial court abused its discretion in declining to rebut the PCSA as unjust and inappropriate. In Point II, Mother contends the trial court misapplied the law by ordering her to pay half of all the children's education expenses in addition to the PCSA.

## Point I

### Standard of Review

"Our review of . . . [the] award of child support is essentially one of the trial court's application of the two-step [*Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.

4

App. W.D. 1996),] procedure, applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Beermann v. Jones*, 524 S.W.3d 545, 549 (Mo. App. W.D. 2017) (internal quotation marks omitted). "Thus, we review the award in light of the circuit court's application of the two-step procedure . . . ." *Id.*

"Step one is a mathematical calculation the mandatory use of which insures that the child support guidelines will be considered in every case as mandated in § 452.340.7 and Rule 88.01." *Woolridge*, 915 S.W.2d at 379, *cited with approval in Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997) ("[T]he trial court should follow the detailed prescriptions contained within *Woolridge* first to determine and find for the record the presumed correct child support amount and, then, to make a proper record with respect to why the presumed correct child support amount should be rebutted, if the trial court so determines."). "There is a rebuttable presumption that the amount of child support calculated pursuant to [Form] 14 is the correct amount of child support to be awarded in any judicial or administrative proceeding." Rule 88.01;[4] *accord* § 452.340.9; *Elliott v. Elliott*, 920 S.W.2d 570, 577 (Mo. App. W.D. 1996).

In step two, the trial court exercises it discretion in determining whether to rebut the PCSA as "unjust or inappropriate, considering all relevant factors." *M.L.R. v. Jones*, 437 S.W.3d 404, 406 (Mo. App. S.D. 2014) (citing *Woolridge*, 915 S.W.2d at 379). "The burden is on the party seeking to rebut the Form 14 amount to show that it is unjust or inappropriate." *Elliott*, 920 S.W.2d at 575.

---

[4] All rule references are to I MISSOURI COURT RULES – STATE 2024.

If the trial court did not err with regard to step one, "we then review the circuit court's rebuttal review of its presumed child support determination for an abuse of discretion. [W]e will interfere with the trial court's award only if the trial court abused its discretion by ordering an amount that is against the logic of the circumstances or arbitrary or unreasonable." *Beermann*, 524 S.W.3d at 549 (alteration in original) (citation omitted) (quoting *Dodge v. Dodge*, 398 S.W.3d 49, 52 (Mo. App. W.D. 2013)).

> The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. If reasonable minds could differ about the propriety of the trial court's decision, there is no abuse of discretion.

*Cureau v. Cureau*, 514 S.W.3d 685, 689 (Mo. App. E.D. 2017) (citation omitted). "To determine whether the trial court abused its discretion, this court reviews the evidence in a light favorable to the decree, disregarding any evidence to the contrary and deferring to the trial court's judgment even if the evidence could support a different conclusion." *Hammer v. Hammer*, 139 S.W.3d 239, 240 (Mo. App. W.D. 2004).

## Analysis

"Rule 88.01 requires the use of Civil Procedure Form 14 in calculating child support." *Watkins v. Watkins*, 839 S.W.2d 745, 748 (Mo. App. W.D. 1992). "The terms of Rule 88.01 are mandatory, and courts must either award child support in conformity with the result obtained by using Form 14 or make a finding on the record that an award of such an amount is unjust or inappropriate." *Id*. "When determining the correct amount of child support, the court can either accept or reject the parties' Form 14 calculations." *Heckman v. Heckman*, 422 S.W.3d 336, 340 (Mo. App. W.D. 2013).

6

Here, the trial court accepted Father's Form 14 calculation, the first step of the *Woolridge* procedure. Mother does not assert any error regarding this first step; she does not challenge any amount included in the Form 14 as erroneous or argue that the Form 14 was calculated incorrectly.

Instead, Mother argues the trial court erred in its application of step two of the *Woolridge* procedure, asserting it failed to consider the significant travel expenses that she will incur as a result of the parenting plan when it declined to rebut the PCSA.

> In step two, the trial court is required to consider whether to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors. Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards. The rule as written and as interpreted here furthers the intent of the rule to promote fair and consistent child support awards in this state.

*Woolridge*, 915 S.W.2d at 379 (citations omitted). When exercising its broad discretion to either accept the PCSA or rebut it as unjust or inappropriate, the trial court must consider the relevant factors identified in section 452.340 and in the Form 14 guidelines. *See Emig ex rel. Emig v. Curtis*, 117 S.W.3d 174, 180 (Mo. App. W.D. 2003) ("The motion court must consider all the relevant factors, including those listed in section 452.340, to decide whether the PCSA should be rebutted."). Thus, the trial "court abuse[s] its discretion by not fully considering the factors contained in section 452.340 in determining the amount" of child support. *Id.* (holding that the motion court abused its discretion in declining to rebut the PCSA where its judgment demonstrated that it had failed to consider a relevant portion of Comment A to Line 12 of Form 14).

As relevant to this appeal, the trial court must consider "[t]he child's physical and legal custody arrangements, including the amount of time the child spends with each parent and *the reasonable expenses associated with the custody or visitation arrangements*" when determining the appropriate amount of child support.  § 452.340.1(5) (emphasis added).  Additionally, Comment A to Line 12 of Form 14 provides:

> In a proceeding to establish a child support order or to modify the support payable under an existing order, when determining whether to deviate from the presumed child support amount (line 12), the court or administrative agency should consider all relevant factors, including whether:
>
>  . . . .
>
> (4) The parent obligated to pay support incurs significant or unusual expenses in connection with transportation of himself or herself or any child who is the subject of the proceeding for exercise of any periods of overnight visitation or custody.

To support her claim that the trial court failed to consider her future visitation-related travel expenses, Mother does not rely on any specific portion of the judgment's language or the record.  Rather, Mother relies entirely on her own assertion that, if the trial court had *properly* considered the evidence of her future travel expenses, it would have certainly rejected the PCSA as unjust because of her financial inability to pay both the travel expenses and the support amount given her income.  We disagree.

As an initial matter, Mother's assertion that she cannot afford to pay the child support amount given her income and future travel expenses is not evidence that the trial court failed to *consider* her travel expenses—without citation to some additional support in the record:

Other than the alleged disparity between the amount by which his income exceeds his expenses and the amount of the presumed child support, father points to nothing in the record to indicate that, in not rebutting the presumed child support amount, the trial court failed to consider his ability to contribute to the payment of child support. Without evidence to the contrary, we can infer that the trial court considered father's ability to pay in making the specific finding that the presumed child support amount was not unjust or inappropriate. Thus, in accepting the Form 14 amount as proper, the trial court implicitly held that father failed to carry his burden of proving that the presumed amount was unjust or inappropriate.

*In re Marriage of Bottorff*, 221 S.W.3d 482, 489 (Mo. App. S.D. 2007) (citations omitted).

Additionally, the record and the judgment demonstrate that the trial court, in fact, considered Mother's evidence regarding her travel expenses and the relevant portions of the Form 14 guidelines.

The trial court expressly stated in its judgment that it considered all the evidence presented, which would include Mother's testimony of her expected future travel expenses and the receipts of her travel expenses from the three years prior: "The Court having considered the evidence and record made by the parties, makes the following findings of fact, conclusions of law, orders and judgments." Furthermore, in determining the support amount, the trial court did *not* credit all of the evidence presented:

The Court has considered the testimony of each witness and has made judgments regarding the credibility of each witness. The Court has accepted some of the testimony of each witness as credible and rejected other parts of the testimony of each witness as not credible. The findings of fact and conclusions of law made by the Court in this modification are consistent with the Court's determination of the credibility of the evidence and of the witnesses.

Because Mother did not request further findings of fact on that issue pursuant to Rule 73.01(c), the trial court was not required to articulate specific findings of fact

9

regarding Mother's travel expenses when it accepted the PCSA from Father's Form 14. *See Wood v. Wood*, 94 S.W.3d 397, 409 (Mo. App. W.D. 2003) ("Under the mandatory *Woolridge* procedure, the trial court is required to make specific findings for the record with respect to its determination of child support, without a request being made under Rule 73.01(c), in two situations: (1) in step 1 of the procedure, where the court rejects the parties' Form 14s and does not do its own; and (2) in step 2, where it rebuts the PCSA.").

Therefore, we must presume that the trial court's judgment was made in accordance to its determinations on the credibility and weight of the evidence. *See* Rule 73.01(c) ("All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."); *Judy v. Judy*, 998 S.W.2d 45, 53 (Mo. App. W.D. 1999) ("In the present case, the trial court did not include the pension and retirement funds in the marital property distribution and made no specific findings of fact regarding these items. Therefore, this court is required by Rule 73.01[(c)] to presume that the fact issues were found 'in accordance with the result reached.'"); *Bottorff*, 221 S.W.3d at 489 ("[I]n accepting the Form 14 amount as proper, the trial court implicitly held that father failed to carry his burden of proving that the presumed amount was unjust or inappropriate."); *Elliott*, 920 S.W.2d at 577 ("Without evidence to the contrary, we can infer in ordering the appellant to pay child support in the Form 14 amount calculated, that the trial court considered his ability to pay and found the Form 14 amount was not unjust or inappropriate which is a prerequisite to rebutting a Form 14 amount.").

10

Not only has Mother failed to demonstrate that the trial court disregarded her evidence of expenses without any consideration, the judgment facially demonstrates that the trial court considered her evidence in the context of determining the appropriate child support amount.

The judgment represents in *general* terms that the trial court performed its statutory duties: "The Court has considered the application of Form 14 Guidelines and Missouri Supreme Court Rule 88. . . . The presumed amount is not rebutted as unjust or inappropriate."

Additionally, the judgment represents its *specific* consideration of Mother's travel expenses by *affirmatively recognizing* that Mother will incur travel expenses under the parenting plan: "[Mother] shall pay 100% of the cost of all travel expenses in order for the children to travel to and from Kansas City, Missouri in order for her to exercise parenting time outside of [the] Kansas City, Missouri area." This specific recognition of the travel expenses in the judgment confirms that the trial court considered this factor before arriving at its judgment. *See Sturgeon v. Sturgeon*, 849 S.W.2d 171, 175 (Mo. App. E.D. 1993) (citation omitted) ("In paragraph 12 of the decree, the trial court specifically mentioned the continuing maintenance and income of the rental properties. Viewing all of the evidence and permissible inferences therefrom in the light most favorable to the trial court's decree, we are persuaded that the trial [court] at least *considered* the effect when establishing maintenance and child support.").

11

Under these circumstances, we cannot conclude—as Mother requests of us—that

the trial court failed its duty to *consider* Mother's future travel expenses, and we likewise

conclude that the trial court did not abuse its discretion on this topic.[5]

Point I is denied.

## Point II

## Standard of Review

"[T]he decree or judgment of the trial court will be sustained by the appellate court

unless there is no substantial evidence to support it, unless it is against the weight of the

evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

*M.D.P.-W. by B.N.W. v. M.P.*, 684 S.W.3d 357, 360 (Mo. App. W.D. 2024) (alteration in

original) (quoting *Watkins*, 839 S.W.2d at 748).

## Analysis

"The presumed child support amount on the Form 14 is intended to cover the

children's ordinary living expenses.  In addition to ordinary expenses covered by the

---

[5] We acknowledge that, given Mother's testimony regarding the travel expenses she expects to incur due to the parenting plan, the trial court would have likely been within its discretion to rebut the PCSA.  *See Rosito v. Rosito*, 268 S.W.3d 410, 418 (Mo. App. W.D. 2008) (upholding the rebuttal of the PCSA based on testimony that father expected to incur $540 in monthly travel expenses under the parenting plan).  However, testimony that a party will be unable to pay the child support does not *require* the trial court to rebut the PCSA as unjust.  *See In re Marriage of Bottorff*, 221 S.W.3d 482, 488 (Mo. App. S.D. 2007) (quoting *Cash v. Cash*, 812 S.W.2d 265, 267 (Mo. App. W.D. 1991)) ("[I]t is [Mother]'s place to 'adjust income or obligations, or both, in such a way as to provide the payment of the child support [she] is ordered to pay.'").  If we were to allow a party's purported net income to dictate the amount of child support, then any party could avoid paying child support by artificially raising expenses.  *Id.* (collecting cases) ("For good reason, we believe that case law does not support this definition, for otherwise a parent could effectively avoid paying child support by simply increasing his or her own expenses to a level equivalent to his or her income.").

presumed child support amount, the court can award extraordinary expenses." *Woolery v. Woolery*, 679 S.W.3d 17, 27 (Mo. App. W.D. 2023) (citation omitted) (citing *Pickering v. Pickering*, 314 S.W.3d 822, 838 (Mo. App. W.D. 2010)). If the trial court finds that either party will incur extraordinary education expenses, it must factor those costs into Line 6e of Form 14, as instructed by Comment A:

> Post-secondary educational expenses and private or parochial elementary, middle and high school expenses are not included in the schedule of basic child support obligations. These expenses may be included in Form No. 14 as an "other extraordinary child-rearing cost" if the parents agree or the court orders that the parents contribute to payment of these expenses.

> "Other extraordinary child-rearing costs" may include, but are not limited to, the cost of tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel and other activities intended to enhance the athletic, social or cultural development of a child.

> An order may include the cost of tuition, room and board, books, fees and other reasonable and necessary expenses. In determining the amount of these expenses, scholarships, grants, stipends and other cost-reducing programs available to the child should be considered.

*See also J.W. by K.C.G. v. N.R.W.*, 695 S.W.3d 231, 246 (Mo. App. W.D. 2024) (describing examples of extraordinary expenses and cautioning that such expenses must not overlap with ordinary expenses already accounted for in the PCSA). Such extraordinary expenses must not duplicate the ordinary expenses included in the PCSA. *Woolery*, 679 S.W.3d at 27.[6]

---

[6] Conversely, not every education expense is extraordinary, so requiring a party already paying the PCSA to additionally pay a portion of *all* education expenses would duplicate at least some ordinary expenses already covered by the PCSA. *See J.W. by K.C.G. v. N.R.W.*, 695 S.W.3d 231, 246-47 (Mo. App. W.D. 2024) (holding the trial court "misapplied the law" by including ordinary education expenses in its award of extraordinary education expenses). Further, as relevant to this appeal, school lunches do

Here, Mother was ordered to pay Father the PCSA amount of $545 per month. This support amount represents the full extent of Mother's obligation for the children's *ordinary* education expenses. The Form 14 that the trial court accepted entered $0 for both parties on Line 6e of the Form 14. Thus, the trial court found that neither parent had any extraordinary education expenses. Therefore, when the trial court ordered Mother to pay the PCSA, that amount included her full obligation for the children's education expenses.

The trial court nonetheless ordered Mother to pay half of "*any* educational expenses for the children, including school lunches," in addition to the child support amount. In doing so, the trial court erroneously applied the law.

Based on the absence of extraordinary education expenses found by the trial court, which neither party contests on appeal, Mother is not responsible for any portion of the children's education expenses—beyond her child support payment.[7]

Point II is granted.

---

not qualify as an extraordinary education expense. *Id.* at 246 ("Of those expenses of which Mother complains, at least three expenses—school lunches, cell phones, and car insurance—do not meet Form 14's definition of extraordinary expense and were already included in the basic child support amount."); *McGowan v. McGowan*, 43 S.W.3d 857, 864 (Mo. App. E.D. 2001) ("We conclude that the cost of school lunches is an ordinary, not an extraordinary, child-rearing cost. Therefore, we find that the trial court abused its discretion by including the cost of school lunches in its calculation of extraordinary child-rearing costs on its Form 14.").

[7] Father concedes in his Respondent's Brief that Mother is entitled to relief on Point II of her appeal.

## Conclusion

The trial court's judgment ordering Mother to pay half of all the children's education expenses in addition to the PCSA is reversed. The remainder of the trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Karen King Mitchell, Presiding Judge, and Lisa White Hardwick, Judge, concur.